**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL NO.  3:04CV500
(3:01CR195-1)**

| | |
|---|---|
| **HASSAAN HAAKIM RASHAAD,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **Vs.** ) | **MEMORANDUM AND** |
| ) | **ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ———————————————— ) | |

    **THIS MATTER** is before the Court on the Petitioner's motion

pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence,

filed September 29, 2004.  No response is necessary from the

Government.

    A prisoner in federal custody may attack his conviction and sentence

on the grounds that it is in violation of the Constitution or United States law,

was imposed without jurisdiction, exceeds the maximum penalty, or is

otherwise subject to collateral attack.  **28 U.S.C. § 2255.**  However,

> [i]f it plainly appears from the face of the motion and any
> annexed exhibits and the prior proceedings in the case that the
> movant is not entitled to relief in the district court, the judge

shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.**  The Court, having reviewed the record of criminal proceedings, enters summary dismissal for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On October 1, 2001, the Petitioner and a co-defendant were charged with three counts of Hobbs Act violations, in violation of 18 U.S.C. §§ 1951, *et seq*.; two counts of using a firearm during crimes of violence, in violation of 18 U.S.C. § 924(c); one count of conspiracy to possess with  intent to distribute in excess of 50 grams of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841, 846 and 860; one count of possession of a detectable amount of marijuana and three counts of possession of 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841.  **Bill of Indictment, filed October 1, 2001.**

On January 9, 2002, the Government filed a superseding bill of indictment which added two additional Hobbs Act violations and two additional § 924(c) charges.  **Superseding Bill of Indictment, filed**

**January 9, 2002.** The Petitioner elected to proceed to jury trial.[1] After a two day trial, the jury found the Petitioner guilty of all 14 counts of the superseding bill of indictment. **Verdict Sheet, filed June 5, 2002.** The special verdict form used by the jury contained the following unanimous findings of the jury beyond a reasonable doubt: (1) in connection with Count Three, a charge of violating 18 U.S.C. § 924(c), the Petitioner used and carried, brandished and possessed the firearm described in that count; (2) in connection with Count Five, another § 924(c) charge, the Petitioner used and carried, brandished and possessed the firearm described in that count; (3) in connection with Count Seven, a third § 924(c) charge, the Petitioner used and carried, brandished and possessed the firearm described in that count; (4) in connection with Count Nine, a fourth § 924(c) charge, the Petitioner used and carried, brandished and possessed the firearm described in that count; (5) in connection with Count Ten, the conspiracy charge, the conspiracy involved at least 50 grams of cocaine base; and (6) in connection with Counts Twelve, Thirteen and Fourteen,

---

[1]The Petitioner's co-defendant entered into a plea agreement with the Government and testified against him.

the substantive drug offenses, the Petitioner possessed with intent to distribute at least 5 grams of cocaine base. *Id.*

On October 24, 2002, the undersigned sentenced the Petitioner to life imprisonment followed by 82 consecutive years of imprisonment for the § 924(c) counts. **Judgment in a Criminal Case, filed November 15, 2002.** On direct appeal, the Petitioner claimed the Government breached an immunity agreement with him and that his motion to suppress the evidence obtained from a wiretap should have been granted. The Fourth Circuit held that the Petitioner "failed to satisfy his obligations [under the immunity agreement] by escaping custody and by failing to be completely truthful in regard to his involvement in a series of uncharged robberies." ***United States v. Rashaad*, 76 F. App'x 509, 510 (4th Cir. 2003).** The Circuit also sustained the denial of the motion to suppress. *Id.*

The Circuit filed its decision on September 29, 2003 and the Petitioner did not petition the United States Supreme Court for a writ of *certiorari*. This motion, filed on September 29, 2004, is, therefore, timely.

## II. DISCUSSION

It is first noted that Petitioner raised some of the same arguments here which he made on direct appeal. He claims that his attorney failed to move to suppress the evidence received as a result of the wiretap and failed to claim the wiretap was not authorized. Both of these arguments were raised and rejected on direct appeal and may not be renewed in this collateral attack. **United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004), cert. denied, 126 S. Ct. 330 (2005); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); United States v. Rush, 99 F. App'x 489 (4th Cir. 2004); United States v. Nwankwo, 2 F.Supp.2d 765, 772 (D. Md. 1998), appeal dismissed, 173 F.3d 426 (table), 1999 WL 134198 (4th Cir. 1999).** He also argues that the undersigned should have enforced his immunity agreement with the Government. That argument was also raised and rejected on direct appeal. **Rashaad, supra.**

There are also a series of frivolous claims alleged which are rejected outright. The Petitioner claims that the presiding judiciary were on inactive status and, therefore, the Court had no jurisdiction over his case. This allegation does not warrant any discussion. He also claims that the jury failed to find the drug quantities at issue. However, the verdict sheet clearly shows that as to each of Counts Ten, Twelve, Thirteen and

Fourteen, the jury made findings of a specific amount of cocaine base.

**Verdict Sheet,** *supra***.**  As a result, this argument is also rejected without discussion.

In support of this motion, the Petitioner raises a litany of ineffective assistance claims.  The Supreme Court has stated the test for determining whether a defendant received adequate assistance of counsel.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

***Strickland v. Washington***, **466 U.S. 668, 686 (1984).**  Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail.  ***Id.***  Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability the result of the trial would have been different.  ***Id.***, **at 688.**

The Petitioner's first argument is that counsel should have objected to his career offender status, as reported in the presentence report, on the ground that the Government never filed an information pursuant to 21

U.S.C. § 851.  That statute requires the Government to file an information advising a defendant of his prior felony drug convictions if it intends to enhance a sentence based on those convictions.  **21 U.S.C. §§ 851, 841.** However, the notice requirement of § 851 does not apply when the Government seeks to enhance a sentence based on the Sentencing Guidelines rather than a statutory enhancement.  ***United States v. Foster, 68 F.3d 86 (4th Cir. 1995).***  In the Petitioner's case, his sentence was enhanced based on U.S.S.G. § 4B1.1(a),[2] not 21 U.S.C. § 841(b).  Thus, the Government was not required to file an information pursuant to § 851.  ***See, e.g., United States v. White**, 43 F. App'x 623 (4th Cir. 2002); **United States v. King**, 39 F. App'x 39 (4th Cir. 2002); **United States v. Hastings, 205 F.3d 1335 (table), 2000 WL 234536 (4th Cir. 2000).***

Next, the Petitioner claims his sentence of life imprisonment for Count One exceeded the maximum statutory sentence of 20 years for a violation of 18 U.S.C. § 1951.  As a result, he claims that his attorney was

---

[2]This is the "career offender" guideline which provides that if the defendant was at least 18 years old at the time of the instant offense, the instant offense is a felony which is either a crime of violence or a controlled substance violation, and the defendant has two prior felony convictions for a crime of violence or a controlled substance offense, then he is a career offender for guideline purposes.

ineffective for not recognizing this and objecting to this issue. The Petitioner was convicted in Count One of conspiracy to obstruct or affect commerce by physical violence or threats thereof, in violation of 18 U.S.C. § 1951. The maximum sentence for this crime is 20 years imprisonment. He was also convicted of four separate counts of violating §1951 by virtue of the series of robberies he committed. Each of those counts carried a maximum sentence of 20 years imprisonment. Thus, the Petitioner faced five, 20-year sentences, or a maximum possible sentence of 100 years, a sentence which, for all practical purposes, was a sentence of life imprisonment. However, the probation officer grouped these five convictions for sentencing. **Presentence Report, prepared July 23, 2002, at 10.**

The probation officer also found that the Petitioner qualified as a career offender pursuant to U.S.S.G. § 4B1.1. *Id*. Because he qualified as a career offender, his offense level was 37. *Id*. Because his criminal history category was VI, the Petitioner's Guideline range of imprisonment was 360 months to life imprisonment. The Petitioner's argument is that the Guideline range of imprisonment exceeded the statutory maximum of 20 years for any of the Hobbs Act violations.

This argument overlooks the fact that the Petitioner was also convicted in Count Ten of conspiracy to possess with intent to distribute at least 50 grams of cocaine base. The statutory maximum sentence for this count is life imprisonment. Thus, the Petitioner's sentence of life imprisonment did not exceed the statutory maximum for the count subject to the most severe penalty, that is, the drug conspiracy charge in Count Ten. As a result, his attorney was not ineffective in failing to object.

The next claim is that counsel was ineffective because he did not move to dismiss the indictment as defective. The Petitioner claims that the indictment should have alleged the mandatory minimum sentences he faced in Counts Three, Five, Seven and Nine, all of which charged violations of 18 U.S.C. § 924(c). This argument stems from the penalty provisions of that statute which provide that if a defendant uses, carries and brandishes a firearm during a crime of violence, he shall be sentenced to a mandatory minimum sentence of seven years imprisonment which must run consecutive to any other sentence. **18 U.S.C. § 924(c)(1)(A)(i).** If a defendant is convicted of a second or subsequent charge of violating § 924(c), he shall be sentenced to a mandatory minimum sentence of 25 years for each such conviction which must run consecutive to every other

sentence.  **18 U.S.C. § 924(c)(1)(C)(i).**  Thus, when the Petitioner was
convicted of the first § 924(c) count, his sentence was a mandatory
minimum sentence of seven years which had to run consecutive to any
other sentence.  And, for each of the other three § 924(c) counts, the
statute required the Court to impose a 25 year consecutive sentence,
resulting in a sentence for the other three counts of 75 years consecutive
imprisonment.

The Petitioner claims that each count of the indictment should have
reflected the term of imprisonment which he faced.  There is no
requirement that the bill of indictment allege the punishment faced by the
defendant.  ***Harris v. United States*, 536 U.S. 545 (2002) (penalty
provisions of § 924(c) are sentencing factors which need not be
alleged in the indictment and found by the jury); *United States v.
Chambers*, 59 F. App'x 509 (4th Cir. 2003) (bill of indictment need not
allege the penalty provisions of the offense); *United States v.
Johnson*, 37 F. App'x 599 (4th Cir. 2002).**  Each of the counts of the
indictment which charged the Petitioner with violating 18 U.S.C. § 924(c)
alleged that he used, carried, brandished and possessed a firearm during
the crime of violence alleged in that count.  Moreover, although not

required (see *Harris, supra*), the verdict sheet contained special interrogatories pursuant to which the jury unanimously found as to each count that the Petitioner (1) used and carried, (2) brandished, and (3) possessed the firearm in furtherance of the crime of violence.  Since the bill of indictment is submitted to jury for its use during deliberations, it would have been  prejudicial to the Petitioner had such penalties been alleged.  It is black letter law that punishment is the province of the Court. **United States v. Guerra, 60 F.3d 826 (table), 1995 WL 386885, \*2 (4th Cir. 1995) (citing United States v. Ramantanin, 452 F.2d 670, 672 (4th Cir. 1971)).**

Next, the Petitioner claims that as to the counts charging him with controlled substances violations, the drug quantities were not submitted to the jury but were found by the Court at sentencing, an error which his attorney should have noticed.  This is blatantly incorrect:  the verdict sheet clearly shows that as to each count, the jury made a specific finding of the drug quantity involved in that count.  **Verdict Sheet, *supra*.**  Because the jury found that the conspiracy charged in Count Ten was involved with at least 50 grams of cocaine base, the Petitioner's offense level was set at 32.  **U.S.S.G. § 2D1.1(c); Presentence Report, *supra*, at 10.**  The only

count as to which no quantity was found was Count Eleven, the charge of possession of an unspecified amount of marijuana. However, no quantity was assigned to the Petitioner in connection with this count because the offense level was based on Count Ten. As a result, the drug quantities were both charged in the indictment and specifically found by the jury. It was these amounts which were used by the Court at sentencing. Thus, there was no *Apprendi*[3] error to which counsel could have objected.

The Petitioner also claims that because Count Ten charged two different types of drugs and three different statutes, his attorney was ineffective for failing to move to dismiss that count. Count Ten charged the Petitioner with conspiracy to possess with intent to distribute at least 50 grams of cocaine base and a detectable amount of marijuana within 1,000 feet of a school and playground, in violation of 21 U.S.C. §§ 841, 846 and 860. Although the indictment referenced two other statutes, the crime charged in Count Ten was conspiracy. While the additional statutes provided the Petitioner with notice of the means and object of the

---

[3] ***Apprendi v. New Jersey*, 530 U.S. 466 (2000).** The Supreme Court held in *Apprendi* that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. That is precisely what occurred in the Petitioner's case.

conspiracy, the offense charged was conspiracy and thus, the additional statutes in no manner rendered the indictment defective.

While the indictment alleged a specific quantity of cocaine base, it did not allege a specific quantity of marijuana. As a result, only the cocaine base quantity was submitted to the jury which specifically found that the conspiracy involved at least 50 grams. ***United States v. Collins*, 415 F.3d 304, 314 (4th Cir. 2005) ("Guilt of the substantive offense defined in [§ 846] is not dependent upon a determination of the . . . type of narcotics distributed.").** The Constitution is not violated when the Government "drop[s] from an indictment those allegations that are unnecessary to an offense that is clearly contained within it[.]" ***United States v. Miller*, 471 U.S. 130, 144 (1985).** As long as the crime and the elements thereof are fully set out in the indictment, a defendant's rights are not violated by the fact that the indictment alleges more crimes or another means of committing the same crime. ***Id.*; *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994) (citing *Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (Where conspiracy is the gist of the crime, all that is necessary in the indictment is that the object of the conspiracy be set forth sufficiently to identify the offense which the defendant is**

**charged with conspiring to commit.)).**  The Petitioner's sentence was
based on the quantity of cocaine base alleged in Count Ten and
specifically found by the jury.  ***United States v. Rhynes*, 206 F.3d 349 (4th
Cir. 1999), *vacated in part on reh'g en Banc on other grounds*, 218
F.3d 310 (4th Cir. 2000) (The district court sentenced defendants after
the jury returned a verdict of guilty on an indictment charging the
defendants with a multi-drug conspiracy (heroin, cocaine, cocaine
base, and marijuana), without specifying which drug was the object of
the conspiracy.).**  Moreover, despite the Petitioner's argument, the jury
did not return a general verdict but a special verdict in which the jury made
findings of both the type and amount of drug on which the conspiracy was
based.  ***See, e.g., United States v. Gadson*, 27 F. App'x 150, 151 (4th
Cir. 2001).**

     The Petitioner next claims that his attorney deprived him of his Sixth
Amendment right to testify because his attorney failed to advise him that
he had a right to do so.  In an affidavit attached to the motion, the
Petitioner claims, variously, that he would have testified that he actually *did*
commit each of the crimes with which he was charged, that he did not
escape from custody, that he did not breach his immunity agreement, and

that he did not commit some of the crimes that his co-defendant testified the Petitioner did, in fact, commit.

"[A] criminal defendant has a constitutional right to testify on his own behalf at trial." **United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003).** This right may be waived as long as it is knowingly and voluntarily waived. **United States v. Stokes, 112 F. App'x 905, 906 (4th Cir. 2004) (citing United States v. Mullins, 315 F.3d 449, 452, 545-55 (5th Cir. 2002)).** At the end of the trial, the Court asked defense counsel if there was any further evidence for the defendant. **Trial Transcript, filed January 27, 2003, Vol. III, at 584.** At that time, the Petitioner's attorney advised in open court and on the record, "No, sir. I believe Mr. Rashaad has decided not to testify." **Id.** At no point did the Petitioner refute the representation made by his attorney in court and on the record. **Id.** The Court finds that his representations made now, years afterward, are not reflected in the record of the contemporaneous events and, therefore, does not find that this allegation raises an issue. In short, the Petitioner's allegation that his attorney did not advise him that he had a right to testify is directly refuted by the transcript of the trial proceedings.

The final attack on counsel's performance is that, in connection with the Hobbs' Act violations, he failed to move for a judgment of acquittal based on the Government's lack of evidence to support the element of interference with commerce. The Petitioner was convicted of robbing two different Family Dollar Stores by pointing guns at the heads of the managers and taking all cash and checks in the stores. The natural consequence of robbery is the obstruction of commerce, however minimal. ***United States v. Williams*, 342 F.3d 350, 355 (4th Cir. 2003), *cert.* *denied*, 540 U.S. 1169 (2004).** The taking of money from these stores obstructed, delayed or affected commerce because it interfered with the movement, transportation or flow of goods and merchandise, money or property in commerce. ***Id.*; *United States v. Elias*, 285 F.3d 183, 189 (2d Cir. 2002).** The Petitioner also robbed two restaurants after closing by forcing the night managers to hand over money. ***United States v.*** ***Manning*, 232 F.3d 891 (table), 2000 WL 1468444 (4th Cir. 2000) (theft** **from the night manager in the parking lot after closing).** The acts of theft of merchandise or currency collected throughout the day and threatening employees of the stores and restaurants interfere with commerce. ***Williams, supra*.** In short, the evidence against the Petitioner

was overwhelming and his attorney was not ineffective by not specifically arguing that commerce had not been affected.[4]

Since the Petitioner's attorney was not ineffective, the second prong of *Strickland* need not be applied. ***Strickland, supra.***

The Petitioner also claims that the undersigned erred by allowing into evidence testimony of his conversations with law enforcement which were elicited in connection with the immunity agreement. However, the Fourth Circuit has held that the Petitioner materially breached that immunity agreement. ***Rashaad, supra.*** A defendant's statements made during a proffer meeting may be used against him at trial following his material breach of an immunity agreement. ***United States v. Seeright*, 978 F.2d 842 (4th Cir. 1992); *United States v. Reed*, 272 F.3d 950 (7th Cir. 2001) (material breach of the immunity agreement justifies the admission of incriminating statements defendant made during the proffer); *United States v. Molinaro*, 11 F.3d 853 (9th Cir. 1993); *United States v. Irvine*, 756 F.2d 708 (9th Cir. 1985).**

Finally, the Petitioner claims he is entitled to relief based on a recent trio of decisions from the Supreme Court. In *Apprendi, supra*, the Supreme

---

[4]The attorney did, however, make a general motion for acquittal.

Court held that other than a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to the jury and proven beyond a reasonable doubt.  The *Apprendi* decision does not apply retroactively to cases on collateral review.  ***San-Miguel v. Dove*, 291 F.3d 257 (4th Cir. 2002).**

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court held that Washington State's statutory sentencing scheme violated *Apprendi* because the sentencing court used aggravating factors, to which the defendant had not stipulated in his plea agreement, to enhance the defendant's sentence above the sentencing guideline range.  However, *Blakely* is inapplicable to the Petitioner's case because there was no enhancement above the sentencing guideline range.  Moreover, *Blakely* does not apply retroactively to convictions, like the Petitioner's, that were final at the time that case was decided.  ***United States v. Price*, 400 F.3d 844 (10th Cir.), *cert. denied*, 126 S. Ct. 731 (2005); *Varela v. United States*, 400 F.3d 864 (11th Cir.), *cert. denied*, 126 S. Ct. 312 (2005); *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir.), *cert. denied*, 126 S. Ct. 442 (2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *United States v. Fowler*, 133 F. App'x 922, 923 (4th Cir. 2005)**

(**"[N]either *Booker* nor *Blakely* announced a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.");** ***United States v. Marshall*, 117 F. App'x 269 (4th Cir. 2004).**

To the extent that the Petitioner may have asserted a claim pursuant to *United States v. Booker*, 543 U.S. 220 (2005), that claim is rejected as well.  In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as a mandatory sentencing procedure, are unconstitutional but that they may be used as an advisory guide by sentencing courts.  The Fourth Circuit, as well as every circuit court which has addressed the issue of whether *Booker* may be applied retroactively to cases on collateral review, has held that *Booker* is not retroactive.  ***United States v. Morris*, 429 F.3d 65, 71-72 (4th Cir. 2005) (Although *Booker* is a new rule of constitutional law, it is not a watershed rule and, therefore, does not apply retroactively to cases on collateral review.); *United States v. Foster*, 2006 WL 1765991 (4th Cir. 2006); *Fowler, supra*; *In re Zambrano*, 433 F.3d 886 (D.C. Cir. 2006); *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005); *Lloyd v. United States*, 407 F.3d 608 (3d Cir.), *cert. denied*, 126 S. Ct. 288 (2005); *Guzman v. United States*, 404 F.3d 139 (2d Cir.),**

*cert. denied*, **126 S. Ct. 731 (2005);** *Humphress v. United States*, **398**

**F.3d 855 (6th Cir.),** *cert. denied*, **126 S. Ct. 199 (2005);** *McReynolds v.*

*United States*, **397 F.3d 479, 481 (7th Cir.),** *cert. denied*, **125 S. Ct. 2559**

**(2005) ("We conclude, then, that** *Booker* **does not apply retroactively**

**to criminal cases that became final before its release on January 12,**

**2005.");** *Green, supra*; *In re Anderson*, **396 F.3d 1336, 1339 (11th Cir.**

**2005).**


### III.  ORDER

   **IT IS, THEREFORE, ORDERED** that the Petitioner's motion to

amend and supplement, filed December 29, 2004, and his motion to

supplement, filed April 21, 2005, are hereby **ALLOWED**; and

   **IT IS FURTHER ORDERED** that the Petitioner's motion to vacate,

set aside or correct sentence pursuant to 28 U.S.C. § 2255 is hereby

**DENIED**.  A Judgment dismissing the action is filed contemporaneously

herewith.

Signed: July 13, 2006

Lacy H. Thornburg
United States District Judge