UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:01-cr-195-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| HASSAAN HAAKIM RASHAAD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 201). Defendant is represented by Joshua Carpenter and Megan Hoffman of the Federal Defenders of Western North Carolina, Inc.

Defendant is serving a sentence of life plus 82 years for robbery, drug-trafficking, and § 924(c) firearm offenses. (Doc. No. 93). Defendant seeks a reduction in his sentence under § 404 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), and early release under 18 U.S.C. § 3582(c)(1)(A). The Government has responded in opposition to the motion. For the following reasons, a hearing will be scheduled to grant Defendant's motion and specify the terms of his supervised release.

### I. BACKGROUND

Between August and September of 2001, Defendant and Reginald McQueary committed four armed robberies of businesses in the Charlotte, North Carolina, area, stealing more than $17,000. (Doc. No. 189 at 8–12). During each robbery, Defendant brandished a firearm and threatened employees, holding his gun to the heads of the store managers, and he demanded money during two of the robberies. (Id.). Also during this period, Defendant and McQueary were

-1-

distributing marijuana and crack cocaine. (Id. at 13–17). In August 2001, Defendant sold 13 grams of crack cocaine to a confidential informant; in September 2001, Defendant sold the informant 51 grams of crack. (Id.). These drug transactions took place within 1,000 feet of a public playground. (Id. at 17). When Defendant committed these offenses, he had previously been convicted of two counts of armed robbery for which he was sentenced to 20 years in prison, robbery with a dangerous weapon for which he was sentenced to 25 years in prison, and breaking and entering. (Id. at 71, 75–76).

A federal grand jury indicted Defendant and charged him with Hobbs Act conspiracy, 18 U.S.C. § 1951; four counts of Hobbs Act robbery, 18 U.S.C. § 1951; four counts of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c); conspiracy to possess with intent to distribute at least 50 grams crack cocaine within 1,000 feet of a playground and marijuana, 21 U.S.C. § 846; three counts of possessing with intent to distribute at least 5 grams of crack cocaine, 21 U.S.C. § 841(a)(1); and one count of possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1). (Doc. No. 36). A jury found Defendant guilty of each offense and found that his drug-trafficking offense involved at least 50 grams of crack cocaine, while his substantive drug-trafficking offenses involving crack cocaine involved at least 5 grams. (Doc. No. 78). This Court's probation office submitted a presentence report and classified Defendant as a career offender based on his prior violent-felony convictions. (Doc. No. 189 at 65).

Judge Lacy H. Thornburg sentenced Defendant to life in prison for the robbery and drug trafficking-conspiracy offenses, to a concurrent term of 480 months in prison for the substantive drug-trafficking offenses, to a consecutive sentence of 7 years in prison for the first § 924(c) offense, and to consecutive sentences of 25 years in prison for each of the three remaining §

924(c) offenses, for an aggregate sentence of life plus 82 years in prison. (Doc. No. 93 at 2). Defendant has served 256 months in the Bureau of Prisons. (Doc. No. 205 at 5). He has received six disciplinary citations between 2000 and 2006, the most serious of which was issued for threatening bodily harm. (Id.). Defendant has completed 32 educational courses or work assignments. (Id.). In July 2021, Defendant asked the warden of his Bureau of Prisons facility to grant him compassionate release. (Doc. No. 201 at 18). The warden denied Defendant's request in November 2021.

Defendant now seeks a reduction in his sentence under § 404 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Defendant provides three bases for relief. First, Defendant argues he is entitled to a sentence reduction under § 404 of the First Step Act for his robbery and drug-trafficking offenses. (Doc. No. 201 at 4–5). Second, Defendant asks this Court to grant him compassionate release based on the extraordinary length of his sentence because of stacked § 924(c) sentences that he would not receive if he were sentenced today. (Id. at 9–10). Third, Defendant contends that the § 3553(a) factors weigh in favor of compassionate release, particularly in light of his impressive post-sentencing rehabilitation and his family and community support. (Id. 19–21).

On February 22, 2022, the Court ordered the Government to respond. (Doc. No. 202). Defendant was appointed counsel and filed a supplemental memo on June 17, 2022. (Doc. No. 218). The Government responded to the supplemental memo on August 8, 2022. (Doc. No. 221). The Government agreed Defendant is eligible for a reduction in his sentence and consented to a reduction of Defendant's drug-trafficking sentence to 140 months in prison, but opposed

Defendant's motion for compassionate release. (Doc. No. 221).

## II. DISCUSSION

### a. Sentence Reduction

Both Defendant and the Government agree that Defendant is eligible for a sentence reduction for his robbery and drug-trafficking offenses under § 404 of the First Step Act. (Doc. No. 221 at 5–8; Doc. No. 222 at 1). This Court likewise finds compelling grounds for a sentence reduction for these offenses.

Section 404 of the First Step Act gives retroactive effect to the changes made by § 2 and § 3 of the Fair Sentencing Act of 2010. Section 404(b) of the Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010, (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. at 5222. The Fourth Circuit explained in United States v. Wirsing that this definition of "covered offense" means that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible" for a sentence reduction under § 404 of the First Step Act, unless they have already moved for relief under § 404 or they received the benefit of the Fair Sentencing Act when they were sentenced. 943 F.3d 175, 186 (4th Cir. 2019); see also § 404(c) of the First Step Act, 132 Stat. at 5222.

Defendant is eligible for a discretionary reduction of his sentence under the First Step Act because he was convicted of a "covered offense" for which the First Step Act authorizes a reduced sentence. He was found guilty of conspiring to possess with intent to distribute at least 50 grams of crack cocaine and of possessing with intent to distribute at least 5 grams of crack

cocaine. Wirsing establishes that these crimes are "covered offenses" under the First Step Act. Moreover, Defendant has not already sought and been denied such a reduction, and he did not receive the benefit of the Fair Sentencing Act when he was originally sentenced. His offense was committed before August 3, 2010, he was subjected to the enhanced statutory penalties under § 841(b)(1)(A), and those statutory penalties were "modified by Section 2 ... of the Fair Sentencing Act."

This Court also considers the remedial purpose of the First Step Act. United States v. Swain, 49 F.4th 398 (4th Cir. 2022) (reversing denial of First Step Act crack reduction for failure to consider remedial purpose). In United States v. Chambers, the Fourth Circuit held that when determining whether and to what extent to reduce a defendant's sentence under the First Step Act, the district court is required to recalculate the range advised by the Sentencing Guidelines for the defendant's crack-related offense as if the Fair Sentencing Act were in effect at the time the defendant committed his offense and apply any other retroactive intervening case law, such as United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). 956 F.3d 667, 668 (4th Cir. 2020). In United States v. Lancaster, the court extended this calculation to include non-retroactive intervening case law as well. 997 F.3d 171, 176 (4th Cir. 2021).

Had the Fair Sentencing Act and the subsequent amendments to the drug-trafficking guidelines been in effect when Defendant committed his offense, Defendant would have been subject to a statutory maximum of 80 years in prison for his drug-trafficking-conspiracy offense because he trafficked at least 50 grams of crack cocaine and he committed his offense within 1,000 feet of a playground. See 21 U.S.C. §§ 841(b)(1)(B), 860; (Doc. No. 205 at 4). And he would have been subject to a statutory maximum of 20 years in prison for his substantive crack-

distribution offenses. See 21 U.S.C. § 841(b)(1)(C); (Doc. No. 205 at 4).

Also, Defendant would not have been classified as a career offender. To qualify as a career offender, a defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. United States v. Huggins, 191 F.3d 532, 539 (4th Cir. 1999). Because breaking and entering is not a "crime of violence" under the career-offender guideline, see U.S.S.G. § 4B1.2(a), and all but one of his otherwise applicable predicate offenses is too old to receive criminal-history points, see Id. § 4B1.2(c)(2), Defendant would not qualify as a career offender. Without the career-offender enhancement, the Sentencing Guidelines advise a sentence of between 140 and 175 months in prison for his robbery and drug trafficking offenses. See (Doc. No. 205 at 5).

In addition to requiring a correct guidelines calculation, Chambers holds "that the § 3553(a) sentencing factors apply in the § 404(b) resentencing context." 956 F.3d at 675. In doing so, the court may "consider movants' post-sentencing conduct." Id. Although Defendant's offense conduct was violent, he has performed relatively well in the Bureau of Prisons, and he has significant family support and plans for employment upon his release. Therefore, this Court reduces Defendant's sentence for his robbery and drug-trafficking offenses to 140 months in prison, the bottom of the range advised by the Guidelines.

    **b. Compassionate Release**

18 U.S.C. § 3582(c)(1)(A) permits this Court to reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

§ 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

Before the First Step Act was enacted, the Sentencing Commission issued § 1B1.13 of the United States Sentencing Guidelines which set forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. However, the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release.

In December 2020, the Fourth Circuit Court of Appeals held in United States v. McCoy that the policy statement is not binding on courts deciding compassionate release motions, because U.S.S.G. § 1B1.13 was enacted before the First Step Act. 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. §

3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because § 1B1.13 applies only to motions brought by the BOP, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id.

In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may still consider the § 1B1.13 factors, however, because that section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The First Step Act also amended 18 U.S.C. § 924(c), removing the possibility that a defendant will receive "stacked" § 924(c) sentences by requiring that the mandatory-minimum sentence that applies for a second or successive § 924(c) conviction applies only when a prior § 924(c) conviction arises from a separate case and already "has become final." First Step Act § 403(a), 132 Stat. at 5222. That change, however, does not apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. at § 403(b).

In McCoy, the Fourth Circuit held that district courts may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c)

-8-

sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The McCoy Court reasoned that "the First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one" that made stacked § 924(c) sentences, such as the aggregate sentence that Defendant is now serving, significantly longer "'than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct.'" Id. (quoting United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)). With regard to cases involving pre-First Step Act stacked § 924(c) sentences, the McCoy court noted "two distinct features" of such sentences that warranted the application of the "extraordinary and compelling reasons" standard: (1) the "sheer and unusual length of the sentences[,]" and (2) the "gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." Id. The Court ultimately affirmed the reductions to four defendants' sentences under the First Step Act. Each defendant had received a lengthy sentence due to having multiple § 924(c) sentences stacked prior to the enactment of the First Step Act.

Following McCoy, it is clear that the court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, and although the policy statement found in U.S.S.G. § 1B1.13 remains useful guidance in considering motions for compassionate release, the court has the discretion to consider other facts that may constitute "extraordinary and compelling reasons," including that a particular defendant was given stacked sentences under § 924(c).

For the same reasons the sentence reductions were appropriate for the defendants in McCoy, a sentence reduction is appropriate, and warranted, for Defendant here. Defendant asks

Case 3:01-cr-00195-MOC    Document 227    Filed 03/27/23    Page 9 of 12

this Court to exercise its discretion to grant him compassionate release because he is serving stacked 25-year sentences for § 924(c) firearm offenses. Were Defendant charged today, he would face a mandatory minimum of 28 years (336 months) on the four § 924(c) counts, rather than the 82 year (984 months) sentence he is currently serving. The "sheer and unusual length" of Defendant's sentence and the "gross disparity" between his sentences and the sentences Congress now believes to be an appropriate penalty qualify as an extraordinary and compelling reason for compassionate release.

The Court further finds that Defendant's institutional record and his rehabilitation provides compelling grounds for a sentence reduction. The record shows that Defendant has been completely infraction-free since 2006—nearly 17 years. (Doc. No. 205). Moreover, Defendant has taken many steps to rehabilitate himself. Defendant completed 32 educational courses or work assignments offered by BOP. (Doc. No. 206). He has maintained steady, fulltime employment in the same Unicor factory since 2013, where he has gained marketable skills that will aid him upon release from prison. (Doc. No. 201 at 19–20) (describing his experience in textiles, including making military fatigues). Defendant currently contributes fifty percent of all monthly earnings towards his restitution obligations. To date, he has paid more than $7,000 of the owed $17,026. (Doc. No. 201 at 2, 19).

Defendant's post-offense rehabilitation, workable release plan, and family support demonstrate that there is no reason to believe Defendant will present a danger to society if released. Defendant is now over 62 years old. He has spent the past 22 years in prison and has genuinely accepted responsibility for his actions. The Fourth Circuit's decision in McCoy affirms that a "very substantial" term of imprisonment "already served" is a factor that weighs in

-10-

favor of compassionate release. 981 F.3d at 286, 288. Despite his lengthy time in prison, Defendant has maintained ties with a strong support network that will assist in his re-entry into the community. Multiple members of his family submitted letters of support to this Court. (Doc. No. 201 Exs. F–N). His extended family speak of the support they will provide Defendant if released, including assisting him with finding employment, and housing. The letters show that Defendant will have a strong support system available to him upon release.

A sentence reduction is appropriate here due to Defendant's excessive sentence, demonstrated rehabilitation, and workable release plan. To provide an adequate sentence reduction, this Court exercises its discretion and reduces Defendant's sentence from four 924(c) offenses to two 924(c) offenses. Therefore, this Court reduces Defendant's sentence for his 924(c) offenses to 168 months in prison – 84 months for each of the two 924(c) offenses.

### III. CONCLUSION

In sum, Defendant is eligible for a sentence reduction for his robbery and drug-trafficking offenses under § 404 of the First Step Act. Therefore, this Court reduces Defendant's sentence for his robbery and drug-trafficking offenses to 140 months in prison. Moreover, under the First Step Act, § 924(c) convictions can no longer be stacked to create excessive sentences like the one imposed in this case. That fact, coupled with Defendant's personal history, characteristics, and rehabilitation, constitute extraordinary and compelling reasons to grant a sentence reduction to Defendant's 924(c) offenses. Therefore, this Court reduces Defendant's sentence for his 924(c) offenses to 168 months in prison. Defendant's total sentence would accordingly be 308 months. However, Defendant has already served 256 months in the Bureau of Prisons and has been infraction free since 2006. Accounting for good time credit, this Court determines that a

-11-

Case 3:01-cr-00195-MOC   Document 227   Filed 03/27/23   Page 11 of 12

sentence of time served is appropriate. The Court will schedule a hearing to grant Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 201), and provide the terms of Defendant's supervised release.

The Court notes that, in light of <u>United States v. McCoy</u>, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under § 3582(c)(1)(A). Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that a hearing will be scheduled to grant Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 201), and specify the terms of his supervised release.

Signed: March 27, 2023

Max O. Cogburn Jr
United States District Judge

-12-

Case 3:01-cr-00195-MOC   Document 227   Filed 03/27/23   Page 12 of 12